IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00152-MR
CRIMINAL CASE NO. 1:16-cr-00068-MR-DLH-1

| | |
|---|---|
| MARK W. LEWIS, )<br>)<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1].[1]

I. **BACKGROUND**

In the fall of 2008, Petitioner Mark Wesley Lewis and his then wife, Debra D. Lewis (Debra), applied for three loans from the Asheville Savings Bank (the Bank). [CR Doc. 26: PSR at ¶ 5]. Petitioner and Debra were real estate developers and sought the loans to acquire and develop Phase 2 of a tract of land in Madison County, North Carolina, known as the Bear River

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV" denoting that the document is listed on the docket in the civil case file number 1:18-cv-00152-MR, or the letters "CR" denoting that the document is listed on the docket in the criminal case file number 1:16-cr-00068-MR-DLH-1.

Lodge Subdivision (the property). [Id.]. On September 24, 2008, Petitioner and Debra submitted to the Bank a personal financial statement that inflated the amount of cash that they had on hand, as well as the value of other real property that they owned or in which they held an interest. [Id.]. They also submitted what they represented to be their authentic 2006 tax return. This document, however, was never filed with the IRS and significantly overstated their actual income. [Id.]. The Bank relied on these documents to lend Petitioner, Debra, and their affiliated companies, Ridgeline Real Estate Corporation and Bear River LLC, a total of $6,525,000, including funds for the purchase, a construction loan for completing infrastructure, and an equity draw for development costs. [Id.].

Petitioner and Debra did not spend the loan proceeds as authorized by the Bank and failed to make the required monthly payments on the loans. [Id.]. Less than a year after approving the loans, the Bank declared the loans in default. [Id.]. The Bank foreclosed on the property, incurring a loss of approximately $800,000. [Id.].

A grand jury in the Western District of North Carolina indicted Petitioner, charging him with knowingly making false statements to secure the loans and aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 1014. [CR Doc. 1: Indictment]. Attorney Renae Alt-Summers was

appointed to represent Petitioner. Petitioner agreed to plead guilty to the charge in exchange for the Government agreeing not to bring any additional charges against him related to any involvement in separate efforts to defraud the Bank or others as part of the real estate development operation and loans to finance this operation. [CR Doc. 19: Plea Agreement at ¶ 1].

As part of the Plea Agreement, the parties jointly recommended to the Court that a base offense level of 7 and a 14-level enhancement for a loss between $550,000 and $1.5 million applied; that no other specific offense characteristics or enhancements applied; that either party could seek a departure or variance; and that Petitioner's guilty plea was timely for purposes of acceptance of responsibility. [Id. at ¶ 6]. Petitioner agreed to pay restitution to all victims harmed by his relevant conduct, including any uncharged conduct. [Id. at ¶ 7].

In accordance with the Local Rules, the Government filed contemporaneously with the Plea Agreement a Factual Basis statement outlining the facts that supported Petitioner's plea. In his Plea Agreement, Petitioner stipulated that he had read and understood the Factual Basis and that he understood that the Factual Basis could be used to determine his sentence. [Id. at ¶ 9]. He also agreed to waive the right to contest his conviction or sentence on appeal or in any post-conviction proceeding,

3

except as to claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 13-14].

At the plea hearing, Petitioner affirmed his guilt, his acceptance of the terms of the Plea Agreement, the fact that he had had ample time to discuss any potential defenses with his attorney, and his satisfaction with his attorney's services. [CR Doc. 20: Acceptance and Entry of Guilty Plea]. The Magistrate Judge found that Petitioner's guilty plea was knowingly and voluntarily made and accepted it. [Id.]. The Magistrate Judge gave notice that Petitioner had 14 days to object to the recommendation that the District Court accept his plea, and that failure to do so would result in the waiver of the right to raise such an objection. [Id. at 10]. Petitioner filed no objection.

The probation officer prepared a Presentence Report (PSR) in advance of sentencing. In accordance with the Plea Agreement, the probation officer recommended a base offense level of 7, a 14-level increase for the amount of loss, and a three-level reduction for acceptance of responsibility, for a total offense level of 18. [CR Doc. 26: PSR at ¶¶ 11-12, 18-20]. With a criminal history category of II, Petitioner's advisory guideline range was 30-37 months' imprisonment. [Id. at ¶¶ 39, 61].

At the sentencing hearing, Petitioner reaffirmed that the answers that he had given at the plea hearing were true and correct and that he would

answer the questions the same way if the Court were to ask them again. [Id. at 5-6]. He told this Court, "I'm guilty, Your Honor." [Id. at 7]. This Court then confirmed the Magistrate Judge's acceptance of Petitioner's plea, finding that it was knowingly and voluntarily made, and found Petitioner guilty of the offense. [Id. at 7-8]. Petitioner stated that he had reviewed and understood the PSR and had had an opportunity to review it with his attorney. [Id. at 8-9]. This Court accepted the PSR, including the calculation of the advisory guideline range of 30 to 37 months' imprisonment. [Id. at 10].

Defense counsel argued that neither Petitioner nor his ex-wife Debra had set out to intentionally defraud anyone, but the combination of the dissolution of his marriage, the recession and drop in property values, and the very lax lending practices of the Bank had led to the conduct. [Id. at 10-11]. She argued that Petitioner had accepted responsibility and had worked to resolve the matter. [Id. at 11]. She also noted that he had been working hard to help support his son, who had special needs, and she requested that he be allowed to self-report so that he could continue working on some jobs that he had that were already in progress. [Id. at 11-12].

The Government sought a sentence at the top of the guidelines range due to Petitioner's prior bank fraud conviction and the fact that he had submitted "outrageously false documentation." [Id. at 13-16]. This Court

5

noted that it had not ordered Debra, who also had pleaded guilty to aiding and abetting bank fraud, to pay any restitution because inadequate evidence had been submitted to support an award of restitution. [Id. at 17]. The Government stated that the Bank had provided documents after Debra's sentencing, that the attorney for the Bank was present and could testify, and that the parties had reached an agreement that the amount of restitution should be $800,000, which was the amount of loss set out in the Factual Basis document. [Id. at 17-19].

This Court varied upward, citing the need to promote respect for the law and to provide for adequate deterrence in light of Petitioner's pattern of activity, in that he had twice previously committed bank fraud of a similar nature and had served time in federal prison for one of those crimes. [Id. at 23-25; see also CR Doc. 26: PSR at ¶ 25 (noting in Petitioner's criminal history a 1996 conviction for bank fraud in the Eastern District of Virginia)]. This Court sentenced Petitioner to 60 months' imprisonment and ordered him to pay $800,000 in restitution. [CR Doc. 33: Judgment]. While Petitioner did not file a direct appeal, he timely filed the present motion to vacate, arguing that his attorney provided ineffective assistance and that Asheville Savings Bank did not follow FDIC regulations and was not diligent in approving his loans. [CV Doc. 1]. The Government filed its response on

August 8, 2018 [CV Doc. 3], and Petitioner filed a Reply on November 20, 2018 [CV Doc. 6].

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

### A.  Petitioner's Ineffective Assistance of Counsel Claims

Petitioner raises four claims of ineffective assistance: (1) his counsel's appointment placed on undue burden on his defense because her office was located in Columbia, South Carolina; (2) his counsel should not have agreed to the standard discovery terms, but rather should have allowed him to have copies of the evidence against him; (3) his counsel could not adequately represent him because she had limited knowledge regarding commercial lending and did not realize that tax schedules were missing from his return;

and (4) his counsel provided ineffective assistance with respect to determining the amount of restitution. [CV Doc. 1 at 7-15, 18].

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207,

232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. at 73-74. Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d at 221-22. Even though Petitioner argues at length regarding the facts and evidence in the case, he concedes that he is guilty of the count of conviction. [Id. at 12].

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Here, Petitioner's claims that his counsel provided ineffective assistance due to the location of

her office, by entering into the standard discovery agreement, and due to her alleged lack of background regarding the subject matter of the charge. All of these, however, relate to pre-plea conduct and, therefore, are all waived by his knowing and voluntary guilty plea. Petitioner affirmed during his plea hearing that his guilty plea was knowingly and voluntarily made and that he was fully satisfied with his attorney's services.[2] Accordingly, he has waived his first three claims of ineffective assistance. As discussed below, even if he had not waived these claims, they are without merit.

### 1. Petitioner's claim that counsel provided ineffective assistance based on the distance to her office.

Petitioner argues that the distance to his counsel's office placed an unreasonable burden on his defense and contends that she should not have been appointed to represent him. [CV Doc. 1 at 7]. He admits that they met in person twice and that they spoke on the telephone three times. [Id. at 8]. Petitioner also concedes that he reviewed the discovery documents during their first meeting and that counsel could have met with him in Asheville,

---

[2] Notably, Petitioner does not seek to vacate his conviction or his plea, but only seeks a reduction in his sentence, including a reduction in his restitution. [Doc. 1 at 5]. Indeed, Petitioner concedes that he committed fraud [Id. at 12], as was reflected in his guilty plea.

Before sentencing, Petitioner filed a *pro se* motion to withdraw his guilty plea, arguing that he had agreed to plead guilty only if certain amendments were made to the Plea Agreement. [CR Doc. 29 at 1]. At the sentencing hearing, Petitioner withdrew his motion to withdraw his plea [CR Doc. 35: Sent. Tr. at 5], thereby specifically disavowing that his plea was in anyway involuntary.

10

although they would have had to meet at the U.S. Attorney's Office, a local restaurant, or in her vehicle. [Id. at 7-8].

Petitioner's preference as to where and how to meet with his attorney does not establish that her performance was deficient, nor has he made any showing of prejudice. Although he claims that it would have been easier to review the discovery if counsel had maintained an office in Asheville, this does not establish prejudice because he admits that he reviewed the documents at the U.S. Attorney's office in Asheville, and he does not explain how meeting elsewhere in Asheville would have made any difference. Additionally, this claim contradicts Petitioner's sworn testimony to this Court that he had sufficient time to discuss any potential defenses with his attorney and that he was satisfied with her services. [CR Doc. 20 at 8-9]. Accordingly, this claim is dismissed.

### 2. Petitioner's claim that counsel provided ineffective assistance by entering into the standard discovery agreement.

Petitioner next contends that counsel should not have entered into the standard discovery agreement because in white collar cases defendants should be allowed copies of the evidence. [CV Doc. 1 at 13]. He argues that this prevented him from providing a thorough explanation to the Government or a defense. [Id. at 14]. Under the expanded discovery agreement in effect

11

in this District, the Government provides copies of discovery materials to defense counsel. A condition of this expanded discovery agreement is that defense counsel must maintain custody and control of these materials. By entering into the expanded discovery agreement with the Government, counsel was able to expedite and potentially broaden the discovery that she received. Petitioner offers no explanation of how this was objectively unreasonable.

In addition, Petitioner cannot establish prejudice. He admits that he reviewed the discovery with his attorney. Any contention that the outcome of the proceeding would have been different had counsel not entered into the expanded discovery agreement is speculative and conclusory. Petitioner re-argues at length the facts of the case and demonstrates that he is familiar with the discovery and evidence against him. [Id. at 8-13]. But Petitioner also concedes that "fraud was committed." [Id. at 12]. He does not argue that he is actually innocent. Moreover, his plea and his admission at the plea hearing and sentencing would foreclose such arguments.

Further, Petitioner has made no showing that he would have been able to retain the discovery documents had his attorney not signed the discovery agreement. See Western District of North Carolina Standard Discovery Order at ¶ 24 (recognizing that a defendant has "no independent right to his

own copy of discoverable documents when represented by counsel" and "a defense attorney has no legal obligation to provide all of the relevant discovery to the defendant"); Fed. R. Crim. P. 16(d)(1) (allowing courts to use protective orders to regulate discovery); Mormon v. United States, No. PWG-12-cr-592, PWG-16-cv-1146, 2017 WL 2955740, at *5 (D. Md. July 11, 2017) (holding counsel did not provide ineffective assistance by entering into standard discovery agreement and failing to give the client full access to the case file). For these reasons, this claim is dismissed.

### 3. Petitioner's claim that counsel was unqualified to represent him.

Petitioner next argues that his counsel did not understand commercial lending or FDIC regulations, citing the fact that she asked him for copies of appraisals, which he asserts could only be provided by the Bank. [CV Doc. 1 at 14-15]. He also contends that she did not realize that most of the schedules and supporting documents were missing from his 2006 tax return. [Id. at 15]. Petitioner asserts that his options were to plead guilty to an incorrect indictment, or to proceed to trial with an attorney he did not believe "had the knowledgeable skill set required to defend me." [Id. at 13]. He asserts that after he reviewed the discovery during their first meeting, he described in detail how the indictment was incorrect, except for the fact that he had not filed his 2006 taxes. [Id. at 8]. He contends that he told counsel

13

that the FBI did not understand basic real estate lending and that its report contained errors. [Id. at 10-11]. Notwithstanding any such alleged lack of understanding by counsel and the FBI agents, Petitioner admits that the document he submitted to the Bank as his 2006 tax return was never actually filed with the IRS; that he signed the fictitious name "Jon Greene" on the draw requests as a certifying architect/engineer; and that he in fact committed a fraud at least with regard to the final draw request. [Id. at 8, 11-12]. In light of these concessions and the evidence against Petitioner on these points, Petitioner cannot establish that counsel's performance fell below an objectively reasonable standard in advising him to plead guilty.

The things Petitioner points to as deficient representation by counsel do not support his argument. He asserts that counsel did not understand that the schedules were missing from his 2006 tax return. Petitioner, however, admits that this document was not in fact his 2006 tax return because he never filed it with the IRS. [Id. at 8]. As such, no actual schedules were missing. Petitioner also asserts that due to counsel's lack of understanding, he was unable to obtain the appraisals for the collateral properties [Id. at 14-15], but Petitioner also asserts that the values he listed on his financial statement were "accurate to appraisals." [Id. at 9].

14

Petitioner also has not shown prejudice resulting from counsel's performance. He does not contend that he otherwise would have proceeded to trial or that his guilty plea was involuntary. Rather, Petitioner seeks only a reduction of his sentence. [Id. at 5]. To the extent that Petitioner argues that the upward variance in his sentence was unfounded, Petitioner does not even address the reasons articulated for the variance. The Court varied upward because this was Petitioner's *third* bank fraud. He had previously served time in federal prison for actions nearly identical to those in this case. An upward variance sentence was necessary to deter Petitioner. [Doc. 35 at 23-28].

For all these reasons, this claim is dismissed.

### 4. Petitioner's claim that counsel provided ineffective assistance with respect to determining the amount of restitution.

Petitioner further argues that counsel was ineffective in agreeing to a restitution amount of $800,000 and in failing to argue that Petitioner should not be required to pay any restitution at all like Debra. [CV Doc. 1 at 18].

Section 2255 provides that:

> A prisoner in custody under sentence of a court . . . claiming the **right to be released** upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

15

> maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added). "A reduction in restitution is not a release from custody." Blaik v. United States, 161 F.3d 1341, 1342 (11th Cir. 1998) (collecting cases). "[I]t is well-settled that § 2255 relief may not be granted when the defendant challenges only a fine or restitution order." United States v. Coward, 230 F.3d 1354 (4th Cir. 2000) (unpublished table decision). Because restitution is a financial penalty, not a physical constraint on liberty, Petitioner may not challenge the order of restitution in a § 2255 proceeding. See United States v. Hudgins, 201 F. App'x 142, 143 (4th Cir. 2006); but cf. United States v. Luessenhop, 143 F. App'x 528, 531 (4th Cir. 2005) (allowing, without discussion of propriety of proceeding under § 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less).

The fact that Petitioner is alleging ineffective assistance with respect to restitution does not change this result, because he is still seeking to challenge a non-custodial restitution order. See Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir. 2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court

lacked subject matter jurisdiction to grant relief under § 2255); Carpenter v. United States, No. 3:15-cv-161, 2015 WL 5254185, at *4 (W.D.N.C. Sept. 9, 2015) (unpublished) (holding that "Petitioner's assertions that his counsel provided ineffective assistance with respect to the order of restitution are not cognizable under § 2255"). Therefore, Petitioner's claim of ineffective assistance with respect to the order of restitution is not cognizable under § 2255 and is therefore dismissed.

Even if Petitioner's restitution claim were cognizable, it is without merit. The Government provided ample documentation to support the amount of restitution. Petitioner offers no evidence to show that the amount of restitution should have been lower than $800,000; he merely relies on the fact that Debra was not ordered to pay restitution.[3] [Doc. 1 at 18]. This is insufficient to show that counsel was deficient or that Petitoiner was prejudiced with respect to the amount of restitution that he was ordered to pay. For all these reasons, this claim is dismissed.

---

[3] Debra Lewis was indicted separately and was sentenced two months prior to Petitioner. At the time of Debra's sentencing, the Bank had submitted no credible evidence of the amount of its loss. Thus, no restitution was ordered.

### B. Petitioner's Challenge to Asheville Savings Bank's Loan Approval Procedures

Petitioner next argues that the Asheville Savings Bank did not follow FDIC regulations or standard banking practices regarding foreclosures and was not diligent in its loan approval process. [Doc. No. 1 at 15-18]. He contends that this increased the loss calculation from the loans on which he defaulted. [Id. at 18]. Because this issue is not based on ineffective assistance of counsel or prosecutorial misconduct, it is barred by the waiver-of-appeal provision in Petitioner's plea agreement. [See CR Doc. 19 at ¶¶ 13-14]. Additionally, this issue is procedurally barred because Petitioner did not raise it on direct appeal. See Bousley v. United States, 523 U.S. 614, 621-22 (1998).

The Court further finds that Petitioner's attempt to cast blame on the Bank for lending him money that he did not repay is simply irrelevant to whether he made or aided and abetted making materially false statements and representations with the purpose of influencing the bank's loan decisions — conduct he swore to this Court was true during his plea hearing.[4] Because this argument is waived, procedurally barred, and irrelevant, it is dismissed.

---

[4] Petitioner also asserts in his Reply that the Government made numerous factual misrepresentations in its Response to the Motion to Vacate. Many of these alleged factual errors, however, were those included in the PSR and/or the Factual Basis. Further, Petitioner stipulated at sentencing that there was a factual basis to support his plea of

## IV. CONCLUSION

For the reasons stated herein, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

---

guilty, and he further stipulated that the Court could accept the evidence in the PSR and in the Factual Basis. [CR Doc. 35 at 7].

# O R D E R

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: August 12, 2019

Martin Reidinger
United States District Judge